UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX RIVERA,<br><br>   Petitioner,<br><br>   v.<br><br>J. D. HARTLEY, Warden,<br><br>   Respondent. | Case No.: 1:13-cv-00285-LJO-JLT<br><br>FINDINGS AND RECOMMENDATIONS RE: RESPONDENT'S MOTION TO DISMISS (Doc. 12)<br><br>ORDER DIRECTING OBJECTIONS TO BE FILED WITHIN TWENTY DAYS |

Petitioner is a state prisoner proceeding in propria persona with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

The instant petition was filed on February 27, 2013. (Doc. 1). On March 6, 2013, the Court ordered Respondent to file a response. (Doc. 4). On May 1, 2013, Respondent filed the instant motion to dismiss. (Doc. 12). On May 16, 2013, Petitioner filed a document entitled, "Motion to Dismiss." (Doc. 13). However, on closer examination, it is clear that the document is intended to be an opposition to Respondent's motion to dismiss and the Court will so construe it.

   A. <u>Procedural Grounds for Motion to Dismiss</u>

As mentioned, Respondent has filed a Motion to Dismiss the petition for failure to state a claim for which habeas relief can be granted. Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits

1  annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules
2  Governing Section 2254 Cases.
3        The Ninth Circuit has allowed Respondent's to file a Motion to Dismiss in lieu of an Answer if
4  the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's
5  procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to
6  evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d
7  599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state
8  procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).  Thus,
9  a Respondent can file a Motion to Dismiss after the court orders a response, and the Court should use
10 Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.
11       In this case, Respondent's Motion to Dismiss is based on a lack of habeas jurisdiction.
12 Because Respondent's Motion to Dismiss is similar in procedural standing to a Motion to Dismiss for
13 failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a
14 formal Answer, the Court will review Respondent's Motion to Dismiss pursuant to its authority under
15 Rule 4.
16       B.   Failure To State A Cognizable Habeas Claim.
17       Respondent contends that the basis for Petitioner's claim, i.e., a purportedly flawed prison
18 disciplinary proceeding, does not implicate the fact of Petitioner's confinement nor its length, and,
19 therefore, the claim is not properly subject to federal habeas corpus jurisdiction.  For his part,
20 Petitioner does not allege that, as a result of the disciplinary hearing, he was assessed any loss of
21 credits that would directly affect the length of his sentence.  Moreover, Petitioner readily
22 acknowledges that he is serving an indeterminate life sentence.  However, Petitioner argues that,
23 pursuant to recent changes in California law, i.e., Marsy's law, the disciplinary hearing will cause the
24 Board of Parole Hearings ("BPH") to set his next parole hearing further into the future, thus delaying
25 the time when he can be paroled and, effectively, extending his term of imprisonment.  For the reasons
26 set forth below, the Court agrees with Respondent that jurisdiction is absent.
27       A federal court may only grant a petition for writ of habeas corpus if the petitioner can show
28 that "he is in custody in violation of the Constitution . . . ."  28 U.S.C. § 2254(a).  A habeas corpus

petition is the correct method for a prisoner to challenge the "legality or duration" of his confinement. Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991), *quoting*, Preiser v. Rodriguez, 411 U.S. 475, 485, 93 S. Ct. 1827 (1973); Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003)("[H]abeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence."); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases.   Indeed, claims challenging the validity of a prisoner's continued incarceration, including the fact or length of the custody, lie within the "heart of habeas corpus" and are cognizable only in federal habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 498-99, 499 n.14 (1973).  In contrast, an action pursuant to 42 U.S.C. § 1983 is appropriate for a state prisoner challenging the conditions of prison life but not the fact or length of the custody. McCarthy v. Bronson, 500 U.S. 136, 141-42 (1991);   Preiser v. Rodriguez, 411 U.S. at 499; Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991).

With respect to prison disciplinary and administrative proceedings, it is established that a constitutional claim concerning the application of rules administered by a prison or penal administrator that challenges the duration of a sentence is a cognizable claim of being in custody in violation of the Constitution pursuant to 28 U.S.C. § 2254. See, e.g., Superintendent v. Hill, 472 U.S. 445, 454 (1985) (determining a procedural due process claim concerning loss of time credits resulting from disciplinary procedures and findings).  The Supreme Court has held that challenges to prison disciplinary adjudications that have resulted in a loss of time credits must be raised in a federal habeas corpus action and not in a § 1983 action because such a challenge is to the very fact or duration of physical imprisonment, and the relief sought is a determination of entitlement of immediate or speedier release. Preiser v. Rodriguez, 411 U.S. 475, 500.

The Supreme Court's decisions concerning any boundaries between habeas jurisdiction and § 1983 jurisdiction have been rendered in cases involving § 1983 proceedings.  Thus, it is established that, regardless of the precise relief sought, an action pursuant to § 1983 concerning prison administrative processes is barred if success in the action would necessarily demonstrate the invalidity of the confinement or its duration, or necessarily imply the invalidity of a conviction or sentence. Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (parole processes).

However, the limits on habeas jurisdiction, or the appropriate extent of any overlap between habeas and § 1983, have not been definitively addressed by the Supreme Court. The Supreme Court has adverted to the possibility of habeas as a potential alternative remedy to an action under § 1983 for unspecified additional and unconstitutional restraints during lawful custody, Preiser v. Rodriguez, 411 U.S. at 499-500, but it has declined to address whether a writ of habeas corpus may be used to challenge conditions of confinement as distinct from the fact or length of confinement itself, see Bell v. Wolfish, 441 U.S. 520, 527 n.6 (1979). Nevertheless, the Court continues to recognize a "core" of habeas corpus that refers to suits where success would inevitably affect the legality or duration of confinement. For example, in Wilkinson, the Court noted that if success on a claim would mean at most a new opportunity for review of parole eligibility, or a new parole hearing at which authorities could discretionarily decline to shorten a prison term, then success would not inevitably lead to release, and the suit would not lie at the core of habeas corpus. Wilkinson, 544 U.S. at 82.

In the singular context of parole, cases in this circuit have recognized a possibility of habeas jurisdiction in suits that do not fall within the core of habeas corpus. Bostic v. Carlson, 884 F.3d 1267 (9th Cir. 1989) (expungement of disciplinary finding likely to accelerate eligibility for parole)[1]; Docken v. Chase, 393 F.3d 1024 (9th Cir. 2004) (a claim challenging the constitutionality of the frequency of parole reviews, where the prisoner was seeking only equitable relief, was held sufficiently related to the duration of confinement). However, relief pursuant to § 1983 remains an appropriate remedy for claims concerning administrative decisions made in prison where success would not necessarily imply the validity of continuing confinement. Docken v. Chase, 393 F.3d at 1030 (characterizing Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997) (holding that a § 1983 suit is an appropriate remedy for challenges to conditions [there, administrative placement in a sex offender program affecting eligibility for parole] which do not necessarily imply the invalidity of continuing confinement).

Nevertheless, it is established in this circuit that where a successful challenge to a disciplinary hearing or administrative sanction *will not necessarily* shorten the overall length of confinement, then habeas jurisdiction is lacking. In Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003), a prisoner sought

---

[1] The Court notes that Bostic involved a suit pursuant to 28 U.S.C. § 2241, not § 2254.

4

relief pursuant to § 1983 for allegedly unconstitutional disciplinary proceedings that resulted in administrative segregation. It was held that § 1983 was the appropriate remedy because the alleged constitutional errors did not affect the overall length of the prisoner's confinement; success in the § 1983 action would not necessarily result in an earlier release from incarceration, and the § 1983 suit did not intrude upon the core or "heart" of habeas jurisdiction. Ramirez, 334 F.3d at 852, 858.

The court in Ramirez went further and considered the related question of the extent of habeas corpus jurisdiction, expressly stating that its holding "also clarifies our prior decisions addressing the availability of habeas corpus to challenge the conditions of imprisonment." 334 F.3d at 858. The court reviewed the decisions in Bostic v. Carlson and Neal v. Shimoda and concluded as follows:

> Our decision in Neal v. Shimoda, 131 F.3d 818 (9th Cir.1997), illustrates the importance of measuring the likelihood that a suit under § 1983 will affect the length of the prisoner's confinement. In Neal, two state prisoners filed suits under § 1983 alleging that they were classified as sex offenders in violation of the Due Process and Ex Post Facto guarantees. Id. at 822-23. Among other harms, both inmates argued that the classification affected their eligibility for parole. Id. We held that Heck did not require the inmates to invalidate their classification before bringing suit under § 1983, because a favorable judgment "will in no way guarantee parole or necessarily shorten their prison sentences by a single day." Id. at 824. The prisoner suits did not seek to overturn a disciplinary decision that increased their period of incarceration. Rather, a successful § 1983 action would provide only "a ticket to get in the door of the parole board." Id. A favorable judgment, therefore, would not "undermine the validity of their convictions," or alter the calculus for their possible parole. Id.
>
> Neal makes clear that under Preiser habeas jurisdiction is proper where a challenge to prison conditions would, if successful, necessarily accelerate the prisoner's release. Thus, Neal accords with our holding here that habeas jurisdiction is absent, and a § 1983 action proper, where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence.

Ramirez, 334 F.3d at 858-59.

Thus, habeas jurisdiction might be predicated on some "conditions" claims affecting parole if there is a sufficient nexus to the length of imprisonment or a sufficient likelihood of affecting the overall length of a prisoner's confinement. Docken v. Chase, 393 F.3d at 1030-31. However, the appellate court has emphasized that measurement of the likelihood will result in an absence of habeas jurisdiction where the challenge will not necessarily shorten the overall sentence. Ramirez, 334 F.3d at 859. In Ramirez, expungement of the disciplinary action was not shown to be likely to accelerate eligibility for parole; rather, success there would have meant only an opportunity to seek parole from a board that could deny parole on any ground already available to it. Thus, the suit did not threaten to

1 advance the parole date.  Id. at 859.

2     Here, Petitioner is serving an indeterminate life sentence.  Petitioner does not allege that, as a
3 result of the prison disciplinary proceedings, he suffered a loss of credits that would, if applied to his
4 sentence, necessarily impact the length of that sentence.  Rather, he alleges that the mere fact of being
5 found guilty of a prison rules violation will prompt the BPH to extend the date of his next parole
6 hearing further into the future than would have been the case had he not been found guilty of a rules
7 violation, thus extending the date--i.e., the parole hearing date--upon which he could possibly be found
8 suitable for parole.  In Petitioner's logic, this is a sufficient nexus to confer habeas jurisdiction.  The
9 Court disagrees.

10     First, the mere possibility of a denial of parole at some later, yet undetermined, time, where
11 one of the considerations for parole is the fact of a defective or unlawfully obtained prison disciplinary
12 violation, does not amount to the denial of a liberty interest.  In Sandin, the U.S. Supreme Court
13 concluded that a *possible* loss of credits due to a disciplinary conviction was insufficient to give rise to
14 a liberty interest where "[n]othing in [the State's] code requires the parole board to deny parole in the
15 face of a misconduct record or to grant parole in its absence, even though misconduct is by regulation
16 a relevant consideration."  Sandin, 515 U.S. at 487.  The Court went on to note that "[t]he decision to
17 release a prisoner rests on a myriad of considerations," and an inmate is generally "afforded
18 procedural protection at this parole hearing in order to explain the circumstances behind his
19 misconduct record."  Id. at 487.  The Court held that "[t]he chance that a finding of misconduct will
20 alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process
21 Clause."  Id.

22     After Sandin, in order to demonstrate a liberty interest, an inmate must show that a disciplinary
23 conviction will *inevitably* lengthen the duration of the inmate's incarceration.  Id.  The Court finds no
24 logical or practical basis upon which to distinguish the instant allegation from the allegation in Sandin
25 that an erroneous disciplinary finding detracted from the inmate's chances for parole.  Accordingly,
26 the same result should obtain, i.e., that no liberty interest is at stake here.  Without a liberty interest,
27 there is no due process interest at issue and thus no basis upon which this Court might assert its habeas
28 jurisdiction.

The BPH is required by California law to consider a wide range of factors in assessing whether an individual inmate is suitable for parole; indeed, the BPH may consider factors as wide-ranging as the original crime, an inmate's criminal and social history, his conduct in prison, any psychological evaluations, Petitioner's efforts at rehabilitation, his remorse and understanding of the crime and its effects of the victims, as well as any parole plans he may have.  Cal. Code Regs. Tit. 15, § 2402(b)-(d).  In other words, any parole decision depends on "an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based on their experience with the difficult task of evaluating the advisability of parole release."  Greenholtz v. Inmates of Nebraska Corr. & Penal Complex, 442 U.S. 1, 9-10, 99 S.Ct. 2100 (1979).

Here, the mere fact of Petitioner's rules violation, while constituting one of a myriad of factors that the BPH would consider in a parole hearing, is simply too attenuated to invoke the protections of due process, Sandin, 515 U.S. at 487, and can hardly be considered so pivotal to the question of granting parole that one could conclude that a sufficient nexus exists between it and the length of imprisonment such that a sufficient likelihood exists of it affecting the overall length of a Petitioner's confinement.  Docken, 393 F.3d at 1030-31.

Second, even if the foregoing were not true and Petitioner could make a convincing case that he would likely be found suitable for parole at the next parole hearing *but for* his rules violation, Petitioner has not even alleged, must less established, any correlation, direct or indirect, between the results of his disciplinary hearing and a real or even potential delay or postponement of the date of his next suitability hearing.  Petitioner has provided no information whatsoever regarding prior, present, or future suitability proceedings.  Certainly, he has neither alleged nor established that the rules violation has already resulted in an extension the date for his next suitability hearing.  Instead, Petitioner argues that such a result might occur in the future.  Although Petitioner speculates that the rules violation will indeed have such an effect at some suitability hearing that has yet to take place, no evidence has been presented that any of this either has already occurred or is likely to occur in the future.  In other words, absent some probative evidence of some kind of bona fide correlation between the results of the disciplinary proceeding and the actual setting of the date of his next parole suitability hearing, any suggestion by Petitioner that the former impacted the latter in a way that would extend

the length of his sentence is entirely hypothetical. The Court cannot assert habeas jurisdiction on the basis of speculation and hypothesis.

In sum, Petitioner has made no allegation, nor has he established, that granting the relief he requests in the instant petition would have any material impact on the length of his sentence, i.e., the date on which the BPH ultimately decides Petitioner is suitable for parole, if indeed it ever does. Because of this, the Court concludes that the habeas relief request in the instant petition, even if granted, would not necessarily shorten Petitioner's overall sentence. Ramirez, 334 F.3d at 859.  Thus, habeas jurisdiction is absent, the motion to dismiss should be granted, and the petition should be dismissed.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the motion to dismiss be GRANTED and the habeas corpus petition be DISMISSED for lack of habeas jurisdiction.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty (20) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 29, 2013**                    /s/ Jennifer L. Thurston
                                             UNITED STATES MAGISTRATE JUDGE